# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DERRICK ESTES** | **CIVIL ACTION** |
| **VERSUS** | **NO.  06-10867** |
| **BURL CAIN, WARDEN** | **SECTION "J"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      STATE COURT PROCEDURAL BACKGROUND

The petitioner, Derrick Estes, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On May 14, 1999, Estes was charged by bill of information in Jefferson Parish with two counts of armed robbery.[3]  The second count was later amended to attempted armed robbery.[4]

The matter was set for trial for October 19, 1999, at which time Estes withdrew his former pleas of not guilty and entered pleas of guilty to each count.[5]  At a hearing held December 1, 1999, the state trial court denied Estes's motion to withdraw the guilty plea.[6]  The court also sentenced Estes to serve five years in prison as to the first count and two years and six months as to the second count, to run consecutively.[7]

That same day, the State filed a multiple bill charging Estes as a second offender.[8] The state trial court held a hearing on September 27, 2000, and determined that Estes was

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 3, Bill of Information, 5/14/99.

[4]Id. (handwritten notation).

[5]St. Rec. Vol. 1 of 3, Plea Minutes, 10/19/99; Acknowledgment and Waiver of Constitutional Rights - Guilty Plea, 10/19/99.

[6]St. Rec. Vol. 1 of 3, Sentencing Minutes, 12/1/99.

[7]Id.

[8]St. Rec. Vol. 1 of 3, Multiple Bill, 12/1/99.

a second offender.[9]  The court sentenced him as a multiple offender to serve 49 years and six months in prison as to count one, to run consecutively with the previously imposed sentence of two years and six months as to count two.[10]

Estes's conviction became final five days later, on October 2, 2000, because he did not file a notice of appeal or seek reconsideration of his sentence.  See Cousin v. Lensing, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914[11]).

Almost one year later, on September 7, 2001, Estes submitted a uniform application for post-conviction relief, which was filed by the state trial court on September 12, 2001.[12]  In that application, Estes alleged three grounds for relief: (1) The trial court erred in denying his motion to withdraw the guilty plea. (2) His counsel, John Standridge, provided ineffective assistance of counsel in that he failed to (a) investigate and prepare for the sentencing hearing, (b) examine defense witnesses and (c) file an emergency writ application for review of the denial of the motion to withdraw the guilty

---

[9]St. Rec. Vol. 1 of 3, Minutes of Multiple Bill Hearing, 9/27/00.

[10]St. Rec. Vol. 1 of 3, Sentencing Minutes, 9/27/00.

[11]At the time of the conviction, La. Code Crim. P. art. 914 required that a criminal defendant move for leave to appeal within five days of the order or judgment that is being appealed or of a ruling on a timely motion to reconsider a sentence. Failure to move timely for appeal under Article 914 renders the conviction and sentence final at the expiration of the period for filing the motion for appeal. State v. Counterman, 475 So.2d 336, 338 (La. 1985). Article 914 was amended by La. Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal. Because this statutory amendment occurred well after petitioner's sentencing, it is inapplicable to this case.

[12]St. Rec. Vol. 1 of 3, Uniform Application for Post Conviction Relief, 9/12/01 (signed 9/7/01).

plea. (3) His counsel, Michael Mullin, provided ineffective assistance of counsel in that he failed to (a) prepare for the multiple bill hearing, (b) cross-examine the expert witness or offer adverse testimony and (c) object to the State's evidence.[13]  The state trial court denied the application on September 27, 2001, finding no merit to the claims.[14]

About a month later, on October 26, 2001, Estes mailed to the state trial court a writ application captioned for the Louisiana Fifth Circuit Court of Appeal and seeking review of the state trial court's order.[15]  The record further reflects that on or about October 24, 2001, Estes mailed to the Louisiana Fifth Circuit a notice of intent to file a writ application, which was forwarded to the state trial court on November 19, 2001.[16]  After receiving it, the state trial court returned the pleading to Estes on December 5, 2001, noting that it was not signed.[17]  He was instructed to sign the pleading and return it to the court for filing.[18]  Estes complied on December 13, 2001.[19]

---

[13]Id. at p.2.

[14]St. Rec. Vol. 1 of 3, Trial Court Order, 9/27/01.

[15]St. Rec. Vol. 2 of 3, Copy, 5th Cir. Writ Application, 11/2/01 (signed 10/23/01); Mail Receipts, 10/26/01.

[16]St. Rec. Vol. 2 of 3, Letter from 5th Cir., 11/13/01; Notice of Intent, 11/19/01 (see post mark on envelope attached).

[17]St. Rec. Vol. 2 of 3, Letter to Estes, 12/5/01.

[18]Id.

[19]St. Rec. Vol. 2 of 3, Letter from Estes, 12/13/01.

4

The state trial court set the return date for filing his writ application for January 22, 2002.[20]  Estes made no other filings in either the trial court or the Louisiana Fifth Circuit on or by that date.

Instead, nine months later, on September 27, 2002, Estes contacted the Louisiana Fifth Circuit asking about the status of his writ application.[21]  The director of central staff at the Louisiana Fifth Circuit advised Estes by letter that he had nothing filed with that court.[22]  The director further advised that, while he had submitted a writ application to the state trial court in December of 2001, he had made no filings directly to the appellate court as required by Uniform La. App. R. 4.[23]

Almost eight months later, Estes filed a motion in the state trial court seeking leave to pursue a writ application in the appellate court for review of the state trial court's September 27, 2001, ruling.[24]  The state trial court denied the request and refused to set a return date for the filing of an appellate writ application.[25]

---

[20]St. Rec. Vol. 2 of 3, Notice of Intent, 1/14/02 (signed 11/19/01); Trial Court Order, 1/14/02.

[21]See St. Rec. Vol. 2 of 3, Letter to Estes, 10/2/02.

[22]Id.

[23]Id.

[24]St. Rec. Vol. 2 of 3, Motion to Advance Writ Application, 6/13/03.

[25]St. Rec. Vol. 2 of 3, Trial Court Order, 6/17/03.

Despite this, on June 10, 2003, Estes submitted a writ application to the Louisiana Fifth Circuit, which was filed by that court on August 11, 2003.[26]  Estes sought review of the state trial court's September 27, 2001, denial of his application for post-conviction relief.  The Louisiana Fifth Circuit denied relief finding no error in that ruling.[27]

Estes filed a timely[28] writ application to the Louisiana Supreme Court on September 22, 2003, seeking review of the same three post-conviction claims.[29]  The Louisiana Supreme Court denied the application without reasons on October 8, 2004.[30]

In the meantime, on August 24, 2004, Estes returned to the state trial court to file an application to correct an illegal sentence claiming that his juvenile conviction could not be used as a predicate offense in the multiple offender adjudication.[31]  The state trial court ordered a response from the prosecution.[32]  The district attorney filed the response

---

[26]St. Rec. Vol. 3 of 3, 5th Cir. Writ Application, 03-KH-952, 8/11/03 (post marked 7/10/03).

[27]St. Rec. Vol. 3 of 3, 5th Cir. Order, 03-KH-952, 8/19/03.

[28]La. Code Crim. P. art. 922(C); La. S. Ct. R. X§5(a).

[29]St. Rec. Vol. 1 of 3, La. S. Ct. Letter, 2003-KH-2647, 9/22/03 (showing post mark of 9/11/03); St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 03-K-2647, 9/22/03 (post mark 9/11/03, signed 9/10/03).

[30]State ex rel. Estes v. State, 883 So.2d 1032 (La. 2004); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2003-KH-2647, 10/8/04.

[31]St. Rec. Vol. 2 of 3, Application to Correct an Illegal Sentence, 8/24/04.

[32]St. Rec. Vol. 2 of 3, Trial Court Order, 8/26/04.

6

on September 24, 2004, alleging that the claim was in procedural default and not appropriately raised post-conviction pursuant to La. Code Crim. P. 882.[33]

On September 30, 2004, Estes filed a motion for summary judgment, alleging that the State had failed to file a response and he was entitled to judgment.[34]  He also filed a reply to the State's response on October 13, 2004.[35]  The state trial court denied the motion for summary judgment because the State had in fact filed a response.[36] Thereafter, on October 18, 2004, the state trial court denied Estes's motion, finding that the claim was procedurally improper.[37]  Several days later, on October 25, 2004, the court also denied Estes's reply to the state's response as seeking repetitive relief.[38]

On October 16, 2004, Estes filed a writ application in the Louisiana Fifth Circuit seeking review of the denial of his application to correct an illegal sentence.[39]  The court

---

[33]St. Rec. Vol. 2 of 3, State's Response, 9/24/04.

[34]St. Rec. Vol. 2 of 3, Motion for Summary Judgment, 9/30/04 (signed 9/27/04).

[35]St. Rec. Vol. 2 of 3, Petitioner's Reply to State's Response, 10/13/04.

[36]St. Rec. Vol. 2 of 3, Trial Court Order, 10/15/04.

[37]St. Rec. Vol. 2 of 3, Trial Court Order, 10/18/04 (signed 10/15/04).

[38]St. Rec. Vol. 2 of 3, Trial Court Order, 10/25/04 (signed 10/22/04).

[39]St. Rec. Vol. 3 of 3, 5th Cir. Writ Application, 04-KH-1351, 11/16/04 (post marked 11/12/04, signed 11/11/04).

denied the application on November 22, 2004, finding no error in the trial court's ruling.[40]

On December 20, 2004, Estes wrote the Louisiana Fifth Circuit requesting the status of his case.[41]  The court sent him a copy of its order denying the application on January 6, 2005.[42]

Estes filed a writ application with the Louisiana Supreme Court on March 7, 2005, seeking review of the appellate court's ruling.[43]  While the writ application was pending, he also filed a second application for post-conviction relief in the state trial court on June 27, 2005, challenging the use of the juvenile conviction in the multiple bill proceedings.[44] The state trial court denied the application as meritless and as repetitive of the issues raised in the prior application to correct an illegal sentence.[45]  His subsequent writ application to the Louisiana Fifth Circuit was also denied with the court finding no error in the trial court's ruling.[46]  Estes did not seek further review of this ruling.

_____

[40]St. Rec. Vol. 3 of 3, 5th Cir. Order, 04-KH-1351, 11/22/04.

[41]St. Rec. Vol. 3 of 3, Letter to Estes, 1/6/05.

[42]Id.

[43]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 05-KH-550, 3/7/05 (post mark 1/25/05, signed 1/24/05).

[44]St. Rec. Vol. 2 of 3, Uniform Application for Post Conviction Relief, 6/27/05 (signed 6/21/05).

[45]St. Rec. Vol. 2 of 3, Trial Court Order, 6/30/05.

[46]St. Rec. Vol. 3 of 3, 5th Cir. Writ Application, 05-KH-751, 7/29/05 (post mark 7/25/05); 5th Cir. Order, 05-KH-751, 8/3/05.

On January 9, 2006, the Louisiana Supreme Court issued its ruling on Estes's pending writ application in which he was challenging the 2004 denial on procedural grounds of his application to correct an illegal sentence based on the use of the juvenile conviction as a predicate in the multiple bill proceeding.[47]  The court denied the application, citing La. Code Crim. P. art. 930.8 and State ex rel. Glover v. State, 660 So.2d 1189 (La. 1995),[48] and La. Code Crim. P. art. 930.3 and State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996),[49] as the procedural basis for its ruling.[50]

More than five months later, Estes filed another application to correct an illegal sentence, alleging that the information in the multiple bill contained incorrect information regarding his prior juvenile conviction.[51]  The state trial court denied the application as meritless.[52]  His subsequent writ application to the Louisiana Fifth Circuit

---

[47]State ex rel. Estes v. State, 918 So.2d 1033 (La. 2006); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2005-KH-0550, 1/9/06.

[48]At the time of his conviction, La. Code Crim. P. art. 930.8 provided a three-year period for a defendant to file for post-conviction relief in the state courts.  In Glover, the Louisiana Supreme Court held that an appellate court can deny post-conviction relief as untimely under Article 930.8, even if the lower court addressed the merits or did not consider timeliness.

[49]In Melinie, the Louisiana Supreme Court, relying on La. Code Crim. P. Art. 930.3, ruled that claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

[50]Id.

[51]St. Rec. Vol. 2 of 3, Application to Correct an Illegal Sentence, 6/27/06.

[52]St. Rec. Vol. 2 of 3, Trial Court Order, 8/16/06.

was also denied with the court finding no error in the trial court's ruling.[53]  Estes did not

seek further review of this ruling.

## II.   FEDERAL HABEAS PETITION

On December 18, 2006, Estes filed a petition for federal habeas corpus relief

seeking relief on grounds that the State improperly used a prior juvenile conviction as the

predicate offense during the multiple bill proceeding.[54]  In anticipation of the State

raising a procedural default defense, Estes supplemented his petition to argue that a

fundamental miscarriage of justice would occur if this court did not review the merits of

his claim.[55]  He argued that he is "actually innocent" of being a second offender because

the prior juvenile conviction can not properly be used as a basis for a multiple offender

proceeding.[56]

The State responded to Estes's federal petition by alleging that the petition is not

timely filed and that the claim raised is procedurally barred from federal review.[57]  Estes

---

[53]St. Rec. Vol. 3 of 3, 5th Cir. Writ Application, 06-KH-691, 9/19/06 (post mark 9/13/06); 5th Cir. Order, 06-KH-691, 9/22/06.

[54]Rec. Doc. No. 1.

[55]Rec. Doc. No. 14.

[56]Id.

[57]Rec. Doc. No. 17.

replied to the State's response, urging that he meets the fundamental miscarriage of justice exception to imposition of the procedural bar.[58]

III.   STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[59] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Estes's petition, which, for reasons discussed below, is deemed filed in this court on October 23, 2006.[60]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and

[58]Rec. Doc. No. 18.

[59]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[60]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Estes's petition on December 18, 2006, when pauper status was granted.  Estes, however, signed the petition on October 23, 2006, which is the earliest date he could have submitted it to prison officials for mailing.

must not be in "procedural default" on a claim.  <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20

(5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

For the following reasons, I find that Estes's petition is <u>not</u> timely filed under the

AEDPA and must be dismissed with prejudice for that reason.  I also find that his claim

is in procedural default and must also be dismissed with prejudice for that reason.

IV.   <u>STATUTE OF LIMITATIONS</u>

Section 2244(d)(1) of the federal habeas statute requires that a petitioner bring his

Section 2254 claims, among other things not relevant here, within one year from the date

of finality of the judgment of conviction.[61]  Estes's conviction became final on October

2, 2000, which was five days after he was sentenced and did not appeal or file a motion

to reconsider his sentence.

---

[61]Specifically, Section 2244(d) provides:
(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus
by a person in custody pursuant to the judgment of a State court.  The limitation period
shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by
> State action in violation of the Constitution or laws of the United States
> is removed, if the movant was prevented from filing by such State
> action;
> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly recognized
> by the Supreme Court and made retroactively applicable to cases on
> collateral review; or
> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.
(2)  The time during which a properly filed application for State post-conviction or other
collateral review with respect to the pertinent judgment or claim is pending shall not be
counted toward any period of limitation under this section.

Thus, literal application of the statute would bar Estes's Section 2254 petition as of October 2, 2001.  As discussed at footnote 60 above, under the federal mailbox rule, his federal petition is deemed filed on October 23, 2006, five years after the deadline imposed by the AEDPA, and it must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

A.    EQUITABLE TOLLING

First, the United States Supreme Court has held that the one-year period of limitations in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 1814 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  Pace, 125 S. Ct. at 1814-15; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Estes has not asserted any reason that might constitute rare or exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional

circumstances" described in recent decisions.  See United States v. Wynn, 292 F.3d 226

(5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into

believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398,

402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of

excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling

not justified during petitioner's 17-day stay in psychiatric ward, during which he was

confined, medicated, separated from his glasses and thus rendered legally blind, and

denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged

failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at

808 n.2 (assuming without deciding that equitable tolling was warranted when federal

district court three times extended petitioner's deadline to file habeas corpus petition

beyond expiration of AEDPA grace period).

B.   STATUTORY TOLLING

       In addition to equitable tolling, however, the AEDPA itself provides for

interruption of the one-year limitations period, in stating that "[t]he time during which

a properly filed application for State post-conviction or other collateral review with

respect to the pertinent judgment or claim is pending shall not be counted toward any

period of limitation under this subsection."  28 U.S.C. § 2244(d)(2) (emphasis added).

By its plain language, this provision does not create a new, full, one-year term within

which a federal habeas petition may be filed at the conclusion of state court post-

conviction proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

<u>Flanagan</u>, 154 F.3d at 199 n.1; <u>accord</u> <u>Brisbane v. Beshears</u>, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); <u>Gray v. Waters</u>, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. <u>Pace</u>, 125 S. Ct. at 1812 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); <u>Williams v. Cain</u>, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting <u>Villegas v. Johnson</u>, 184 F.3d 467, 469 (5th Cir. 1999)); <u>Smith v. Ward</u>, 209 F.3d 383, 384-85 (5th Cir. 2000). The United States Fifth Circuit has

clarified its prior opinions to the contrary and resolved that timeliness in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

Thus, as outlined above, the one-year AEDPA limitations period began to run in Estes's case on October 3, 2000, the day after his conviction became final.  The federal limitations period ran uninterrupted for 339 days until Estes submitted to the state trial court his first application for post-conviction relief signed by him on September 7, 2001.[62]  Affording Estes every benefit, the application remained pending until January 22, 2002, the deadline he was given by the state trial court to file a writ application seeking review of its September 27, 2001, ruling.[63]  The AEDPA limitations period began to run again on January 23, 2002, and did so for the remaining 26 days, when it expired on  Sunday, February 22, 2002, or the next business day, Monday, February 23, 2002. Estes had no properly filed state post-conviction or other collateral review proceedings pending during that period.

The record outlined above demonstrates that, after the state trial court's post-conviction ruling on September 27, 2001, Estes failed to pursue a timely writ application with the Louisiana Fifth Circuit.  For example, he sent a copy of his appellate writ application to the state trial court and he sent his unsigned notice of intent to file a writ application to the Louisiana Fifth Circuit.  After several efforts, his signed notice of intent was eventually filed in the state trial court on January 14, 2002, and he was granted

---

[62]For purposes of this report, petitioner's signature date is presumed to be the earliest date on which he could have presented it to prison officials for mailing to the state court.

[63]See St. Rec. Vol. 2 of 3, Notice of Intent, 1/14/02; Trial Court Order, 1/14/02.

until January 22, 2002.  Based on the letter to him from the Louisiana Fifth Circuit on October 2, 2002, Estes apparently believed that he had a writ application pending when he did not.  He waited another eight months before asking the state trial court to "advance" his writ application, a request which was denied.  After this, he finally filed a writ application with the Louisiana Fifth Circuit on July 10, 2003.  This filing was made 18 months after he was supposed to file the writ application and nine months after he was told that he had not properly filed a writ application with the appellate court.

These facts do not establish a basis for equitable tolling.  Nevertheless, if a reviewing court were to forgive Estes this entire period of confusion, his petition to this court would still be untimely.  Under this extraordinarily generous calculation, a court would toll the entire period from September 7, 2001, when Estes signed his first application for post-conviction relief, including the period of confusion referenced above, and through the overlapping filings in the state courts between 2003 and 2006.  The tolled period would continue until January 9, 2006, when the Louisiana Supreme Court denied Estes's second writ application in that court.  The AEDPA limitations period would begin to run again on January 10, 2006, and would do so for the remaining 26 days, until Saturday, February 4, 2006, or the next business day, Monday, February 6, 2006, when it expired.

Estes had no other state post-conviction or other collateral review filed in the state courts until June 27, 2006.  Thus, even affording Estes the most extraordinarily generous

of all possible tolling calculations demonstrates that his federal petition, deemed filed on

October 23, 2006, is untimely.

C.    NO APPLICABLE EXCEPTIONS

I recognize that, under a broad reading, Estes's petition may be construed to

suggest that the limitations period is affected by his claim of actual innocence of the

multiple offender status, and/or that the limitations period began to run, not from the

finality of his conviction, but from the issuance of the Louisiana Supreme Court decision

on which he bases his claim.  These contentions are without merit.

The Fifth Circuit has held that the AEDPA does not provide for an exception to

its limitations period for claims of actual innocence.  Cousin v. Lensing, 310 F.3d 843,

849 (5th Cir. 2002) (citing Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000)).

Petitioner is not entitled to review of his untimely claims merely because he believes he

is entitled to relief.  See United States v. Alexander, 2000 WL 1092618 at *3 (E.D. La.

Aug. 2, 2000) (Barbier, J.); Gaines v. Cockrell, 2003 WL 222444 (N.D. Tex. Jan. 28,

2003) (citing Melancon v. Kaylo, 259 F.3d 401, 408 (5th Cir. 2001)).

As noted in footnote 61, supra, 28 U.S.C. § 2244(d)(1) provides four instances

which can trigger the start of the AEDPA filing period:

> (A) the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by
> State action in violation of the Constitution or laws of the United States is
> removed, if the movant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Estes argues that the basis of his claim arose from the Louisiana Supreme Court's opinion in State v. Brown, 879 So.2d 1276 (La. 2004).  In that case, the Louisiana Supreme Court determined that juvenile adjudications in Louisiana are not convictions for purposes of Apprendi v. New Jersey, 530 U.S. 466 (2000).  In Apprendi, the United States Supreme Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Id. at 490.  The Louisiana Supreme Court in Brown determined that, in its opinion, a non-jury juvenile conviction, though procedurally sound, was not a conviction for purposes of meeting the Apprendi exception and was not an appropriate predicate in a multiple offender proceeding.

Estes based his state post-conviction applications on the Brown court's interpretation of Louisiana law in light of Apprendi.  He argues, under a broad reading, that this gave him a new basis to challenge his multiple offender adjudication.

However, the limitations exception, or trigger, found in Section 2244(d)(1)(C), by its very terms, looks to a new constitutional right created and made retroactive by the United States Supreme Court, not by a state court's interpretation or application of

Supreme Court law.  To that end, the Supreme Court's <u>Apprendi</u> opinion, on which the <u>Brown</u> court relied, was issued on June 26, 2000, which was <u>prior</u> to October 2, 2000, when Estes's conviction and multiple offender sentence became final.  Thus, <u>Apprendi</u> also was not a new rule of law at that time and would not change the limitations calculation above.  Thus, Estes has failed to demonstrate an alternative trigger for the limitations period which would be applicable to his case.

For the foregoing reasons, Estes's federal habeas corpus petition must be dismissed as untimely under 28 U.S.C. § 2244(d)(1)(A).

<u>**RECOMMENDATION**</u>

**IT IS THEREFORE RECOMMENDED** that the petition of Derrick Estes for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United

Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___30th___ day of July, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE